IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RONALD MICHAEL WOODWARD, <br><br> Plaintiff, <br><br> v. <br><br> MASTERCARD DIRECT EXPRESS; and SOCIAL SECURITY DISABILITY, <br><br> Defendants. | REPORT AND RECOMMENDATION <br><br> Case No. 2:16-cv-1110-JNP-EJF <br><br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Evelyn J. Furse |

District Judge Jill N. Parrish referred this case to Magistrate Judge Evelyn J. Furse pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 6.)  On November 22, 2016, the Court granted Ronald Michael Woodward's application for leave to proceed in forma pauperis and waived the prepayment of filing fees pursuant to 28 U.S.C. § 1915 ("IFP Statute").  Accordingly, the Court will screen Mr. Woodward's Complaint as required under the IFP Statute.  See, e.g., Lister v. Dep't of the Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005).  In addition, because Mr. Woodward proceedes pro se in this case, the Court will construe his pleadings liberally.  See, e.g., Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003).

## BACKGROUND

Mr. Woodward contends that in 2014, he received Social Security disability benefits,[1] lived in downtown Salt Lake City, and commuted by bus to Ogden for work. (See Compl. 8, ECF No. 4.)  While working construction on his aunt's house, Mr. Woodward transported building materials and received several traffic tickets.  (Id.)  He failed to pay the fines or appear on the tickets, and a warrant issued for his arrest.  (Id.)  Mr. Woodward contacted the court, and the judge provided him the option of paying $1500 or serving thirty days in jail; Mr. Woodward chose the latter.  (Id.)  Mr. Woodward received a sentence to serve from October 27 to November 27, 2014, in the Weber County Jail.  (Id.)  Mr. Woodward explains that serving thirty days or less would not affect his SSI payments.  (Id.)

Mr. Woodward contends that he failed to anticipate that the post office would return his November 2014 SSI check to Social Security if he did not pick it up from General Delivery at the post office within ten days.  (Id. at 3, 9.)  Once released from jail, Mr. Woodward found the post office had returned his check but found, in its place, a letter from the Social Security Administration instructing him to obtain some form of direct deposit in order to receive future SSI payments.  (Id.)  Mr. Woodward reported to the Salt Lake City Social Security Office to make arrangements for direct deposit and to disclose his incarceration, as well as his week-long stay in the hospital, as required by

---

[1] Mr. Woodward appears to have received benefits pursuant to the Supplemental Security Income program under Title XVI of the Social Security Act.   Thus, the undersigned will refer to Plaintiff's Social Security disability benefits as "SSI" for purposes of this Order.

the Social Security Administration. (Id.) Mr. Woodward contends that he provided the proper paperwork and was informed that the Social Security Administration would directly deposit his SSI payments into his checking account within ten days. (Id. at 11.)

After ten days passed, Mr. Woodward did not receive a direct deposit or a check. (Id.) Mr. Woodward again went to the Salt Lake City Social Security Office and informed the intake worker, Mindy, of the situation. (Id.) Mr. Woodward contends that Mindy erroneously assumed that Mr. Woodward had been homeless sometime in 2014 and that Social Security had overpaid his SSI during this time. (Id. at 12.) Mr. Woodward argues that Mindy arbitrarily reduced his benefits to recoup the alleged overpayments and, as a result, he did not receive any SSI payments for two months. (Id.) Mr. Woodward asserts that Mindy's actions caused him to become homeless because he could no longer afford to pay his rent. (Id.) Mr. Woodward also asserts that Mindy began calling his family members, harassing them, and asking leading and manipulative questions. (Id. at 13.) Once his SSI payments resumed, the Social Security Administration had reduced them from $733.00 to $400.00 per month because now Mr. Woodward was, in fact, homeless. (Id.)

Mr. Woodward alleges that when he had finally saved enough money to rent another apartment, MasterCard "somehow allow[ed] someone in the nieboring [sic] town of Sandy [to] somehow hack into their (MasterCard) system and stoled [sic] 540.00 dollars out of [his] checking account." (Id.) Mr. Woodward contends that the actions of both defendants caused his homelessness. (Id.) The Social Security Administration eventually increased his payment and gave him back money previously withheld. (Id.)

3

He seeks the return of the $540.00 taken from his checking account, as well as punitive damages.  (Id. at 6.)

## LEGAL STANDARDS

Whenever the Court authorizes a party to proceed without payment of fees under the IFP Statute, it is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  In addition, the Court has a duty to raise and determine sua sponte under Rule 12 of the Federal Rules of Civil Procedure whether subject matter jurisdiction exists in a particular case.  See Fed. R. Civ. P. 12(h)(3); McAlester v. United Air Lines, 851 F.2d 1249, 1252 (10th Cir. 1988).  Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000."  Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004). To invoke diversity jurisdiction, "the citizenship of all defendants must be different from the citizenship of all plaintiffs."  McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008).

Furthermore, in determining whether a complaint fails to state a claim for relief under the IFP Statute, the Court employs the same standard used for analyzing motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007).  Under that

standard, the Court "look[s] for plausibility in th[e] complaint."  Id. at 1218 (quoting

Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007)) (second alteration in

original).  More specifically, the Court "'look[s] to the specific allegations in the complaint

to determine whether they plausibly support a legal claim for relief.'  Rather than

adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be

enough to raise a right to relief above the speculative level.'"  Id. (quoting Alvarado, 493

F.3d at 1215 n.2 & Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)) (second and

third alterations in original).

In undertaking that analysis, the undersigned liberally construes Mr. Woodward's

filing because he proceedes pro se and holds them "to a less stringent standard than

formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

1991); see also, e.g., Ledbetter, 318 F.3d at 1187.  At the same time, however, the Court

may not "assume the role of advocate for the pro se litigant," Hall, 935 F.2d at 1110, and

the Court "will not supply additional facts, nor will [it] construct a legal theory for [a pro

se] plaintiff that assumes facts that have not been pleaded."  Dunn v. White, 880 F.2d

1188, 1197 (10th Cir. 1989) (per curiam).  Further,

> [t]he broad reading of the [pro se] plaintiff's complaint does
> not relieve the plaintiff of the burden of alleging sufficient
> facts on which a recognized legal claim could be based. . . .
> [C]onclusory allegations without supporting factual
> averments are insufficient to state a claim on which relief can
> be based.  This is so because a pro se plaintiff requires no
> special legal training to recount the facts surrounding his
> alleged injury, and he must provide such facts if the court is
> to determine whether he makes out a claim on which relief
> can be granted.  Moreover, in analyzing the sufficiency of the
> plaintiff's complaint, the court need accept as true only the

5

> plaintiff's well-pleaded factual contentions, not his conclusory
> allegations.

Hall, 935 F.2d at 1110 (citations omitted).  With the foregoing standards in mind, the

Court will now review the sufficiency of Mr. Woodward's Complaint under the IFP

Statute.

## ANALYSIS

Mr. Woodward filed suit under 42 U.S.C. § 1983 alleging that the Social Security

Administration, through Mindy, wrongfully reduced his SSI payments based on a false

assumption that Mr. Woodward was homeless.  Mr. Woodward further alleges that

MasterCard allowed an unknown individual to steal $540.00 from his checking account.

Mr. Woodward contends both these actions in combination made him homeless.  The

undersigned will address Mr. Woodward's claims against both Defendants in turn.

### I. Social Security Administration

Section 405(g) of the Social Security Act provides a detailed procedure for review

of Social Security Administration determinations affecting eligibility and the payment of

benefits.  See 42 U.S.C. § 405(g).  Although Mr. Woodward states that he brings his

action pursuant to 42 U.S.C. § 1983 by checking a box on the court's preprinted form

complaint, "[f]ederal courts have limited statutory power to review decisions of the

Social Security Commissioner and may review the Commissioner's decisions only as

provided in 42 U.S.C. § 405."  Elliott v. Barnhart, 117 F. App'x 659, 660 (10th Cir. 2004)

(unpublished).  "[F]ederal courts have jurisdiction to review 'any final decision of the

Commissioner,'" but a decision of the Commissioner is not considered "final" until "the

claimant first exhausts his administrative remedies."  Allred v. Social Sec. Admin., 315 F.

6

App'x 74, 75 (10th Cir. 2009) (unpublished) (quoting 42 U.S.C. § 405(g)); see also 20

C.F.R. §§ 404.900(a), 416.1400(a).  Social Security Disability recipients "can appeal

most determinations and decisions" including changes in the benefit amount.  Social

Security Administration, Understanding Supplemental Security Income Appeals

Process, (June 29, 2018, 10:43 a.m.), https://www.ssa.gov/ssi/text-appeals-ussi.htm.  In

addition, section 405(h) of the Social Security Act provides that "[n]o action against the

United States, the Commissioner of Social Security, or any officer or employee thereof

shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising

under this subchapter." Cordoba v. Massanari, 256 F.3d 1044, 1047 (10th Cir. 2001)

(quoting 42 U.S.C. § 405(h)); see 28 U.S.C. § 1331 (governing federal question

jurisdiction); 28 U.S.C. § 1346 (discussing the United States as a defendant).

Prior to seeking judicial review, the Social Security regulations require a claimant

to complete a four-step administrative process by:  (1) first obtaining an initial

determination about the disability benefits application; (2) if dissatisfied with the initial

determination, requesting reconsideration; (3) if dissatisfied with the reconsideration

determination, requesting a hearing before an ALJ; and (4) if the ALJ issues an

unfavorable decision, filing an application for review by the Appeals Council. See 20

C.F.R. §§ 404.900(a), 416.1400(a); see also Griffin v. Astrue, 300 F. App'x 615, 617

(10th Cir. 2008) (unpublished) (addressing review process for a reduction in disability

benefits).  An action for judicial review must be filed in district court within sixty days

after receiving notice of the Commissioner's final decision. See 42 U.S.C. § 405(g)

(providing a sixty-day statute of limitations for filing a complaint in the district court after notice of a final decision by the Social Security Administration).

Mr. Woodward has not alleged that he filed an administrative appeal from the decision of the Commissioner or that the decision was "final" under the applicable regulations.  Even assuming Mr. Woodward did exhaust his administrative remedies, and the reduction in benefits constituted the final decision from the Commissioner, he did not file this action until October 2016, two years later and well beyond the sixty-day statutory limitations period.

Although the Court has the discretion to waive the exhaustion requirement "in certain special cases," Mr. Woodward has not demonstrated that the circumstances of his case require the Court to do so.  Heckler v. Ringer, 466 U.S. 602, 618 (1984).  "A claimant is excused from the exhaustion requirement if (1) full exhaustion would be futile, (2) he has suffered irreparable harm, and (3) he states a colorable constitutional claim that is collateral to his substantive claim of entitlement to social security benefits." Allred, 315 F. App'x at 75.  Mr. Woodward has not alleged that exhaustion would prove futile or that he suffered irreparable harm.  Mr. Woodward likewise failed to assert that he has a wholly collateral constitutional claim.  "Plaintiff does not argue, and the record does not suggest, that the circumstances here place plaintiff's case within 'the narrow group deserving of this special consideration.'" Berry v. Barnhart, No. 02-2289-JWL, 2003 WL 1906394, *3 (D. Kan. April 18, 2003) (unpublished) (quoting Montoya v. Apfel, 211 F.3d 1278, 2000 WL 556582, *2 (10th Cir. May 8, 2000) (unpublished table decision)).  The undersigned RECOMMENDS the District Judge dismiss Mr.

Woodward's social security claim because Mr. Woodward failed to exhaust his administrative remedies, Mr. Woodward filed his Complaint in an untimely manner, and this court lacks subject matter jurisdiction over Mr. Woodward's claims against the Social Security Administration.  See Weinberger v. Salfi, 422 U.S. 749, 764 (1975) (finding exhaustion of administrative remedies "central to the grant of subject matter jurisdiction").

### II.  MasterCard

Mr. Woodward's claim against MasterCard likewise fails for lack of subject matter jurisdiction.  Section 1983 does not create specific rights; rather, it "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States."  Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002).  Thus, to assert a cause of action under § 1983, Mr. Woodward must set forth both of the following elements:  (1) "the existence of a federally-protected right" and (2) "the deprivation of that right by a person acting under color of state law." Wittner v. Banner Health, 720 F.3d 770, 773 (10th Cir. 2013).

Even assuming Mr. Woodward identified a federally-protected right that MasterCard violated, i.e., deprivation of property without due process of law under the Fourteenth Amendment, Mr. Woodward nonetheless failed to demonstrate that MasterCard qualifies as a state actor for purposes of § 1983.  One party deprives another of a federal right under color of law when the depriving party "may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise

9

chargeable to the State." Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207-08 (10th Cir. 2005)

(quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).  Construing the

Complaint in a light most favorable to Mr. Woodward and accepting the allegations as

true, Mr. Woodward has not established that MasterCard constitutes a state actor.

Unfortunately for Mr. Woodward, "the under-color-of-state-law element of § 1983

excludes from its reach 'merely private conduct no matter how discriminatory or

wrongful.'"  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v.

Yaretsky, 457 U.S. 991, 1002 (1982)).

Because this Court does not have subject matter jurisdiction over Mr.

Woodward's claim against the Social Security Administration and his claim against

MasterCard does not raise a federal question, the Court must determine whether

diversity jurisdiction exists under 28 U.S.C. § 1332.  While Mr. Woodward does not set

forth specific causes of action against MasterCard, one could construe Mr. Woodward's

allegations against MasterCard as a state law claim for conversion, theft, or perhaps

breach of contract.  District courts in the Tenth Circuit generally regard conversion, theft,

and breach of contract as state law causes of action.  See, e.g., Margae Inc. v. Clear

Link Techs., LLC, 620 F. Supp. 2d 1284, 1287 (D. Utah 2009) (noting that conversion is

a state law claim), Sanborn v. Am. Lending Network, 506 F. Supp. 2d 917, 924 (D. Utah

2007) (discussing theft as a state law claim); Meshwerks, Inc. v. Toyota Motor Sales

U.S.A., Inc., No. 2:06 CV 97, 2006 WL 2623935, *5 (D. Utah Sept. 13, 2006)

(unpublished) (addressing breach of contract as a state law claim).

Federal district courts may exercise diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  28 U.S.C. § 1332.  "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State."  Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998) (quotations and citations omitted).  While Mr. Woodward's Complaint states that that MasterCard is located in San Antonio, Texas, the Complaint does not meet the damages requirement for diversity jurisdiction as Mr. Woodward seeks the return of $540.00 and "punitive damages the amount to be determine [sic] by my legal counsel." (Compl. 2, 6, ECF No. 4.)  "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter."  Radil, 384 F.3d at 1224.  Mr. Woodward failed to do so.  Accordingly, because this Court lacks jurisdiction over Mr. Woodward's action, the undersigned recommends the District Judge dismiss Mr. Woodward's case.  See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  Kay, 500 F.3d at 1217 (quoting Curley v. Perry, 246 F.3d 1278, 1281 (10th Cir. 2001)).  The undersigned concludes that

permitting Mr. Woodward to file an amended complaint would prove futile because he cannot allege any facts that would give this Court subject matter jurisdiction.  See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (quoting Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007))). Based on the foregoing, this Court recommends that the District Judge dismiss Mr. Woodward's Complaint.

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the undersigned **RECOMMENDS** that the District Judge dismiss Mr. Woodward's Complaint for lack of subject matter jurisdiction.

The Court will send copies of the foregoing Report and Recommendation to Mr. Woodward and hereby notifies him of his right to object to the same.  Within fourteen (14) days of service with a copy, Mr. Woodward may file written objections.  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 29th day of June, 2018.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge